UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Shanthi Varatharajan,

      Plaintiff,

vs                                                                  Case No: 05-71385
                                                                    Honorable Victoria A. Roberts

Parkdale Pharmaceuticals, Inc.,

      Defendant.

_____/

**<u>CORRECTED OPINION AND ORDER</u>**

## I.      INTRODUCTION

This matter is before the Court on Defendant's Motion: (1) for summary

judgment; and, (2) to strike the affidavits of Shanthi Varatharajan and Janie Gwinn.  For

the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendant's

Motion for summary judgment, and **DENIES** Defendant's Motion to strike affidavits.

## II.     BACKGROUND

This action arises out of Plaintiff, Shanthi Varatharajan's employment with

Defendant, Parkdale Pharmaceuticals.

Plaintiff was hired by Defendant on June 4, 2001 as a senior control analyst in a

chemical testing facility.  After her initial favorable performance review on November 6,

2001, Plaintiff claims her then supervisor, Judy Gantenbein ("Gantenbein"), told her she

would be promoted to a scientist once she completed training on all of the required

instruments.

1

In June 2002, Gantenbein was promoted to Director of Chemical Testing.  Jason Crist ("Crist") became Plaintiff's supervisor.  Crist had two coordinators responsible for scheduling the tests to be performed by the analysts, Janet Oberheim and Michelle Leone.  Plaintiff alleges that Crist and Leone harassed her by criticizing her accent and national origin.

Plaintiff also claims she was unfairly assigned certain tests, such as the Poly 80 test.  The Poly 80 test is an undesirable test to perform because it is time consuming and produces a foul odor.  Plaintiff claims she was the only analyst who was asked repeatedly to perform the test, even though seven other employees were also qualified to perform it.

In August 2002, Plaintiff was diagnosed with diabetes that she claims her physician attributes to her stressful work environment.  As a result of her diabetes, Plaintiff was given restrictions that she not work more than 8 hours a day and not work the midnight shift, so that she could maintain a regular sleeping and eating schedule to get her blood sugar level under control.  She claims Defendant ignored her restrictions and scheduled her to perform tests that took between 9 and 10 hours to complete.  Plaintiff eventually asked her physician to increase the restriction to 8.5 hours a day following complaints from Crist that she was not working enough overtime.  She also asserts that Leone and others began calling her "sugar mama," referring to her diabetes.

Crist completed Plaintiff's performance review on November 7, 2002.  While the overall review was favorable, he noted difficulty with "communication."

During this time, Plaintiff sought a promotion to scientist.  In order to achieve a

2

promotion to scientist, Plaintiff was required to complete "GC instrument training." She alleges that the training was supposed to take place in December 2002, but that it was repeatedly delayed or cancelled. Plaintiff did not complete the GC instrument training until December 2003. However, she claims her white colleagues received the training within a few weeks or months. Complaints to the human resources department were unavailing.

Further, Plaintiff alleges she was told by Crist in late 2002 that he would not promote her based on a conversation he overheard five months earlier while listening outside the ladies room. The conversation involved a discussion between Plaintiff and Oberheim in which Plaintiff complained that no one would assist her in preparing a solution for a test she had to run. Oberheim allegedly replied that "no one wanted to help you," to which Plaintiff became upset and stated that she would no longer help others with their tests if they were not willing to do the same for her.

In January 2003, Plaintiff fell and injured her ankle while walking from one building to another to perform a test. Her physician recommended surgery. Plaintiff filed a Worker's Compensation claim. She claims Crist began harassing her in March or April 2003 about leaving work early to attend physical therapy. He required her to return to work after her appointment to make up time missed. Plaintiff began skipping her physical therapy appointments to avoid Crist's complaints.

Plaintiff consulted with an employee assistance program and was directed to report Crist's discrimination and harassment to human resources. In March 2003, Plaintiff told Gantenbein she was going to report her discrimination complaints to human resources. Gantenbein allegedly told her that it was not a good idea.

3

Crist and Gantenbein arranged a meeting with the human resources director, Cheryl Davis ("Davis"), prior to Plaintiff's meeting with Davis.

Plaintiff had a meeting with Davis and Crist on June 11, 2003. She complained that she was: (1) treated differently; (2) the only one running the Poly 80 test; and, (3) denied her GC instrument training. She also questioned the propriety of the promotion to scientist of another individual with lesser qualifications. At a meeting with only Davis on July 1, 2003, Plaintiff identified further instances of harassment and discrimination.

Davis took no action, other than to require Crist to write a summary of why the employee identified by Plaintiff was promoted. Davis allegedly accepted the summary without checking the underlying facts.

The incident that precipitated Plaintiff's termination occurred on September 20, 2004. On that date Plaintiff was directed to perform a "thrombin residual test." The purpose of the test is to verify that the equipment used in manufacturing plants does not have any residual traces of thrombin, which could contaminate future products. The test required Plaintiff to prepare a "standard curve" which is a set of test tubes with increasing concentrations of thrombin, producing increasing levels of fluorescence, used for comparison against the samples Plaintiff was testing. She claims she prepared the standard curve, compared it with her test samples, and recorded what she saw.

After Plaintiff completed her test, a co-worker, Aaron Duchene, used the same standard curve to perform the test with his own samples. Duchene realized the standard curve was flawed because it was not fluorescing in increasing order. Plaintiff told Duchene that was not how it looked an hour earlier when she performed the test. She says she took back the test tubes, and told Duchene he should not use her

4

samples because something was wrong.

Plaintiff was scheduled to leave early that day for a family obligation.  She told Leone, who was present, that she would fill out the "LIR" in the morning.  An LIR is a lab investigation report filled out by the analyst, coordinator, and the manager whenever there is a testing mistake or discrepancy.  Plaintiff left her materials out and left for the evening.  Later, it was discovered that contaminated glassware caused the problem.

On September 23, 2004, Plaintiff was suspended for two weeks pending an investigation of the thrombin residual test incident.  Defendant suspected Plaintiff recorded test results she knew were inaccurate, because the standard curve was obviously flawed when she prepared it.

Within a few days of the suspension Plaintiff went to the Equal Employment Opportunity Commission ("EEOC") and filed a discrimination and retaliation complaint.  The EEOC advised Davis of the complaint.  Plaintiff also filed a complaint with the Michigan Department of Civil Rights on October 4, 2004.

On September 28, 2004, Crist completed a "Request for Involuntary Termination" form.  The form was approved by Gantenbein and Davis, and later approved by the corporate office.  Plaintiff claims the corporate office approved the request based on Crist's summary, not on any independent investigation.  On October 12, 2004, Defendant terminated Plaintiff's employment.

On April 8, 2005, Plaintiff filed a Complaint.  On April 11, 2005, Plaintiff filed a First Amended Complaint alleging: (1) national origin discrimination pursuant to Title VII; (2) national origin discrimination pursuant to the Elliott-Larsen Civil Rights Act ("ELCRA"); (3) disability discrimination pursuant to the Americans with Disabilities Act

5

("ADA"); (4) disability discrimination pursuant to Michigan Persons with Disabilities Civil

Rights Act ("PWDCRA"); (5) age discrimination pursuant to ELCRA; (6) retaliation in

violation of Title VII, ELCRA, ADA, and PWDCRA; and (7) retaliation in violation of the

Workers Disability Compensation Act ("WDCA").

On May 5, 2006, Defendant filed a Motion for summary judgment on all claims.

On June 28, 2006, Defendant filed a Motion to strike two affidavits attached to

Plaintiff's Response to Defendant's Motion for summary judgment.  Defendant argues

that the affidavits of Plaintiff, and a former supervisor at a different company, Janie

Gwinn, are inadmissible under FRCP 56(e).  Additionally, Defendant claims that some

portions of the affidavits contradict Plaintiff's deposition testimony.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d

476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment

if "proof of that fact would have [the] effect of establishing or refuting one of the

essential elements of the cause of action or defense asserted by the parties, and would

necessarily affect application of appropriate principle[s] of law to the rights and

obligations of the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

The court must view the evidence in the light most favorable to the nonmoving party and

it must also draw all reasonable inferences in the nonmoving party's favor.  *Cox v.*

*Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

6

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.    APPLICABLE LAW AND ANALYSIS

### A. National Origin Discrimination Pursuant to Title VII

Plaintiff claims Defendant violated Title VII, 42 USC §2000e, *et seq.*, when it terminated her based on her national origin. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 USC §2000e-2(a)(1).

### 1.    Direct Evidence of National Origin Discrimination

"In Title VII actions, a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination."  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)(citation omitted).

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Id.* at 415.  There must be evidence that the employer not only had a predisposition to discriminate on the basis of national origin, but also that the employer acted on it.  *Id.* The plaintiff does not have to proceed under the *McDonnell Douglas* framework, discussed *infra*, when proving a claim of discrimination through direct evidence.  *Id.*

In *DiCarlo*, the court held that the plaintiff, of Italian descent, created a genuine issue of material fact because he alleged that his supervisor called him a "dirty wop" and stated that there were too many "dirty wops" at the facility.  In addition, the court relied on the fact that the comments were made by a decision maker and that the alleged derogatory speech occurred three weeks before the plaintiff was fired.

Plaintiff claims she has direct evidence of discrimination.  She asserts there is "direct, documented evidence of Defendant's dissatisfaction with, and hostility toward, Plaintiff's English and accent, and ample evidence of Defendant's biases and stereotypes toward minorities." [Response, p. 30].  However, Plaintiff fails to identify what that "direct, documented evidence" is.  While Crist refers to her alleged difficulty in

8

understanding instructions, he does not attribute it to her national origin.  Crist's

performance evaluation states "[o]ccasionally [Plaintiff] has difficulty understanding

instructions...[she] needs to continue to make sure she understands what is being

asked of her...[Plaintiff] needs to improve her communications skills...[s]he needs to

make sure she comprehends instructions so as to avoid conflicts that occur because of

misunderstanding." [Response, Exhibit F, pp.5-6].

While one could infer that Crist is referring to Plaintiff's accent, and hence her

national origin by his statements, "direct evidence of discrimination does not require a

factfinder to draw any inferences."  *DiCarlo*, 358 F.3d at 415.  Plaintiff fails to identify

any direct evidence of national origin discrimination.

Accordingly, Plaintiff fails to establish a prima facie case of national origin

discrimination based on direct evidence.

### 2.    Circumstantial Evidence of National Origin Discrimination

Proving discrimination based on circumstantial evidence requires the burden

shifting analysis adapted from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792

(1973).

"When using circumstantial evidence to create an inference of discrimination, the

complainant must carry the initial burden of establishing by a preponderance of the

evidence a prima facie case of discrimination by...her employer."  *DiCarlo*, 358 F.3d at

414.

> A plaintiff who alleges discrimination on the basis of national origin and
> wishes to prove a prima facie case through the use of circumstantial
> evidence must prove four elements: (1) she was a member of a protected
> class; (2) she suffered an adverse employment action; (3) she was
> qualified for the position; and (4) she was replaced by someone outside

9

the protected class or was treated differently than similarly-situated, non-protected employees.

*Id.* at 415.

Establishing a prima facie case results in a rebuttable presumption that the employer unlawfully discriminated. *Id.* at 414. The defendant then has the burden to articulate "some legitimate, nondiscriminatory reason" for the adverse action. *Id.*

"Finally, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 414-415. Despite the shifting burden analysis, the plaintiff always has the ultimate burden of proving to the factfinder that defendant intentionally discriminated against her. *Id.* at 415.

### a.   Prima facie case

### i.   protected class

There is no dispute that Plaintiff is a member of a protected class based on her national origin. She was born in Sri Lanka.

### ii.   adverse employment action

Plaintiff claims she suffered several adverse employment actions: disparate treatment in work assignments, denial of promotion; denial of training that leads to promotion; and termination.

Defendant does not contest that Plaintiff's allegations constitute adverse employment actions.

### iii.   qualified for the position of scientist

10

Defendant does not argue that Plaintiff was unqualified for her position as a senior control analyst.  However, it does claim that she was unqualified for a promotion to scientist because she "was not performing at the level expected of a senior control analyst." [Motion, p.22].  Defendant does not elaborate on what the qualifications are for a scientist.

Plaintiff directs the Court to her performance reviews.  Gantenbein wrote in her 2001 review of Plaintiff: "has consistently demonstrated her knowledge of chemistry in her testing ability;" "quality of work is consistently accurate and complete...[s]he performs some of the more difficult tests successfully and has improved her completeness of documentation over the last few months;" and "learns quickly and is willing to try new tests or procedures...[she] is enthusiastic about her job and about our company." [Response, Exhibit D].  In Crist's 2002 performance review he states Plaintiff: "consistently produces high quality work...[she] has improved her completeness of documentation;" "produces the expected volume of testing required;" "makes appropriate decisions based on available facts;" but "has difficulty understanding instructions...needs to continue [sic] make sure she understands what is being asked of her." [Response, Exhibit F].  In Crist's 2003 performance review, he states Plaintiff: "continued to make steady progress during the year understanding company and department operations;" "volume of work meets...expectations;" "assures her decisions are correct by verifying them with the appropriate individuals" but "must also continue to make sure she understands what is being asked of her to avoid misunderstandings;" and "must continue to make an effort to understand specific instructions given by

11

colleagues and SOPs[1]." [Response, Exhibit R].

The only reason advanced by Defendant for why Plaintiff was unqualified for a promotion to scientist was her level of performance as a senior control analyst.  Based on her performance reviews, completed over approximately a two year period, Plaintiff creates a genuine issue of material fact as to whether her performance as a senior control analyst was adequate.

### iv.    disparate treatment

The remaining element in a prima facie case of national origin discrimination is whether Plaintiff established that she was treated differently than similarly-situated non-protected employees.

### (a).    treatment in work assignments

Plaintiff alleges she was discriminated against because she was given less desirable work assignments.  Specifically, Plaintiff claims she was the only one repeatedly scheduled to do the Poly 80 test.  She also claims she was the only person required to perform both parts of the Triostate Impurities test, which required Plaintiff to carry testing materials from one building to another.

Defendant does not address Plaintiff's claim regarding the Poly 80 test.  However, in her affidavit, Plaintiff concedes that she was the only one trained to do the Poly 80 test, and after her complaints at least two co-workers were trained to do it.  [Response, Plaintiff's Affidavit, ¶5].  With regard to the Triostate Impurities test, the log book for the test shows that Plaintiff only performed the test 6 of the 14 times it was

---

[1]SOP refers to standard operating procedure.

12

performed. [Motion to strike affidavits, Exhibit D].

Plaintiff fails to support her allegations that she was treated differently on the basis of work assignments.  She does not support her contention that she was overworked or unfairly assigned particular tests compared to her co-workers.  Her affidavit testimony claims that for a number of months she was the only one doing the Poly 80 test.  However, it appears that she was the only one trained to perform the test. After she complained, more individuals were trained. [Response, Plaintiff's Affidavit, ¶5].


Plaintiff cannot defeat Defendant's Motion simply by resting on the allegations in her Complaint.  *Pride v. Bic Corporation*, 218 F.3d 566, 575 (6th Cir. 2000).  "The mere existence of a scintilla of evidence in support of [Plaintiff's] position will be insufficient...[she] must set forth specific facts showing that there is a genuine issue for trial." *Id.*

Here, Plaintiff fails to establish a genuine issue of material fact that she was treated differently on the basis of work assignments.

### (b).    denial of promotion/failure to train

Plaintiff claims she was treated differently than similarly situated co-workers because she was denied a promotion to scientist.  Plaintiff's argument that she was denied training required for the promotion is considered as part of the denial of the promotion because the training was allegedly delayed by to avoid the promotion.

The prima facie case for failure to promote is slightly different.  The Plaintiff must show: (1) she was a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and denied the promotion; (4) other

13

employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-563 (6th Cir. 2000). The only element apparently disputed by Defendant is whether Plaintiff has identified an employee of similar qualification who received the promotion at the time Plaintiff's promotion was denied.

Plaintiff claims that her co-worker, Michelle McGowan, was promoted to scientist even though she "had no pharmaceutical experience and lacked key instrument (HPLC) training." [Response, p. 10]. During Crist's deposition counsel for Plaintiff compared Plaintiff's and McGowan's performance reviews and they were substantially similar. [Response, Exhibit 5, pp.153-166].

Plaintiff also contends that all of her fellow senior control analysts who accepted training were promoted to scientist, except her. She outlines each senior control analyst who worked during the time she was employed with Defendant. [Response, Exhibit H]. Plaintiff also claims that GC training was required for promotion and that in contrast to her co-workers, training was delayed for nearly a year. [Response, p.12].

Plaintiff establishes a prima facie case of discrimination based on failure to promote and failure to train.

### (c).   termination

Plaintiff alleges she was terminated because of her national origin. She claims she was treated differently than similarly situated employees from a non-protected class because she was terminated for her mistake in performing the thrombin residual test, rather than retrained. She points to the "corrective action plan" on the LIR that states

14

"[t]his analyst will not be allowed to perform this test until requalification on this test is completed." [Response, Exhibit M, p.8].  From this, Plaintiff surmises that the remedy was to retrain her rather than to terminate her.

Plaintiff identifies three incidents, documented with LIRs, where co-workers were not terminated for their errors. [Response, p.25; and Exhibit E].  Besides not being terminated, Plaintiff alleges the individuals were not even disciplined.

Plaintiff establishes a prima facie case that she was terminated based on discrimination.

### b.   Nondiscriminatory reason

"The burden of articulating a legitimate, nondiscriminatory reason for the adverse action does not require the defendant to prove the absence of a discriminatory motive in order to rebut plaintiff's prima facie case...the defendant need not persuade the court that it was actually motivated by the proffered reasons...[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Daniels v. Ravenna City School District*, 805 F.2d 203, 207 (6th Cir. 1986).

### i.   failure to promote

Defendant claims that Plaintiff was not entitled to a promotion because she was not performing at the level of a senior control analyst.  The performance reviews referenced by Plaintiff include consistent remarks that Plaintiff had problems with documentation.  Further, Crist repeatedly noted that Plaintiff had a problem performing tasks as instructed.  Both Gantenbein and Crist testified that Plaintiff's performance was sub-par. [Motion, Exhibit 8, p.22 and Exhibit 10, pp. 52, 56, and 66, respectively].  Consequently, Defendant articulates a legitimate, nondiscriminatory reason for not

15

promoting Plaintiff.

### ii.   termination

Defendant asserts that it terminated Plaintiff's employment, following an investigation, because it believed she knowingly reported false test results on the Thrombin Residual test.  It claims that based on the obvious flaw with the standard curve, Plaintiff could not have thought she was recording accurate test results.  The error in the standard curve was immediately apparent to Duchene, who also used Plaintiff's sample.  Plaintiff concedes there was an error with the test. [Response, pp. 21-22].

Defendant articulates a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

### c.   Pretext

"If the defendant successfully presents a legitimate, nondiscriminatory reason for its action, the plaintiff must prove that the reasons proffered by the defendant were a mere pretext for discrimination."  *Daniels*, 805 F.2d at 207.  "To make a submissible case on the credibility of [an] employer's explanation, the plaintiff is required to show by a preponderance of the evidence either: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the employment decision], or (3) that they were insufficient to motivate [the employment decision].  *Peters v. Lincoln Electric Company*, 285 F.3d 456, 460 (6th Cir. 2002).

If Plaintiff presents a genuine issue of material fact that the proffered reason for the adverse action is not the real reason, she can withstand summary judgment. *Peters*, 285 F.3d 470-472.

16

### i.      failure to promote

Defendant's proffered reason for failing to promote Plaintiff is that she failed to perform at the level of a senior control analyst. [Motion, p.22].  Additionally, Defendant notes that there are several other employees who worked at the facility longer than Plaintiff before they were promoted to scientist. [Motion, p. 21].

First, Defendant and Plaintiff are not comparing the same population.  Plaintiff summarizes how long it took her white co-workers to be promoted to scientist *once they were at the position of senior control analyst*, not from their date of hire.  Of the senior control analysts who had the proper training, the longest it took was 1 year and 7 months to be promoted. [Response, Exhibit H].  Plaintiff worked as a senior control analyst for 3 and a half years without a promotion.  Defendant counters Plaintiff's assertion by identifying employees who were there longer than three years before they were promoted to scientist.  However, Defendant appears to calculate from the date of hire, not from the time they became senior control analysts. [Motion, p.21](see also Response, Exhibit E).

Plaintiff's performance reviews indicate that based on a review of several categories, Crist never gave Plaintiff a rank lower than "competent." [Response, Exhibits F and R].  Gantenbein nearly ranked Plaintiff at "commendable." [Response, Exhibit D].

However, Gantenbein testified at her deposition that she was "slightly disappointed in [Plaintiff's] speed of becoming accomplished in the items she was trained in." [Motion, Exhibit 8, p.22].  Further, she testified that Plaintiff had to ask lots of questions on things that she would expect Plaintiff to be accomplished in.  *Id.* at 22-23.  Crist testified in his deposition that Plaintiff did not perform functions in the way that she

17

was instructed and her documentation needed improvement. [Motion, Exhibit 10, pp. 52 and 56].  The performance reviews by Crist did indicate a need to improve documentation and communication.

A genuine issue of material fact exists concerning Defendant's proffered reason for failing to promote Plaintiff, because of the contradictory performance reviews and deposition testimony of Crist and Gantenbein.  Defendant maintains that Plaintiff was not performing to the level of a senior control analyst - but her performance reviews indicate otherwise.  And, Defendant claims employees wait several years before being promoted.  However, all of Plaintiff's white colleagues in the same position were promoted in one and a half years or less.  In particular, Michelle McGowan, a member of a non-protected class, had substantially similar performance reviews to Plaintiff and was promoted in December 2002.

For these reasons, Defendant is not entitled to summary judgment.  "To avoid summary judgment, the plaintiff is required to produce evidence that the employer's proffered reasons were factually untrue."  *Peters*, 285 F.3d at 470.  "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

>           ii.     termination

Defendant's proffered reason for terminating Plaintiff is that she falsified the results of the Thrombin Residual test she performed on September 20, 2004.  It claims there was an obvious flaw in the standard curve and Plaintiff could not have gotten the

18

results she recorded.

Plaintiff disputes that she intentionally falsified her results. She claims she prepared the standard curve; it appeared to be correct; she compared her samples to it and wrote down exactly what she saw. [Response, p. 20].

The Court must take the facts as alleged by Plaintiff. Thus, the Court assumes Plaintiff did not intentionally falsify the test results.

However, this does not render Defendant's proffered reason pretext. The Sixth Circuit adheres to the "honest belief rule." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Id.* "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." *Id.*

Defendant claims it had an honest belief that Plaintiff falsified her test results because she recorded that only one of her twelve samples fluoresced, when several other chemists determined that at least five of her twelve samples fluoresced. [Motion, Exhibit 14]. Based on his statement contained in the request for involuntary termination, DuChene reported that at 4:00pm Leone asked him to assist Plaintiff with a Thrombin Residual test. [Response, Exhibit N]. By the time he prepared his samples, Plaintiff had completed her portion of the test, which included preparing the standard curve. As DuChene viewed his samples next to Plaintiff's standard curve and samples, he immediately noticed that the standard was flawed because it did not fluoresce in

19

increasing order as it was supposed to.  He claims he told Plaintiff her standard was incorrect and she shuffled the standard tubes to a more conforming fluorescence order. After DuChene informed her it was still incorrect, he alleges she became agitated and walked away.

DuChene prepared his own standard curve and compared his samples. DuChene noticed that Plaintiff inaccurately recorded some of her samples as not fluorescing even though they were.  He told her she would have to do further work with her samples.  Plaintiff allegedly became upset and yelled that she did not have time, since she was already scheduled to leave early that day to attend a function at her children's school.  Leone inquired about the situation.  She allowed Plaintiff to leave, but reviewed her samples.  After observing that the results reported by Plaintiff were inaccurate, Leone asked another coordinator to review Plaintiff's samples.  The other coordinator concurred that the results were flawed.  Several other individuals, including Gantenbein and Crist, reviewed Plaintiff's samples.

Plaintiff concedes there was an error with the standard, but claims she did not realize it at the time she recorded her results. [Response pp.20-22].  She also denies that she reordered the samples to achieve the proper fluorescence. [Response, Exhibit 1, pp.193-194].  However, she admits she moved her standard curve to a rack by her samples, but kept them in the same order.

Plaintiff challenges Defendant's conclusion that she knowingly recorded false results because she claims she knew DuChene would be using her standard, so it would make no sense to pass on a flawed standard.  Further, she claims she would not have rearranged the standard because the tubes are labeled, so it would be obvious.

20

The Court must view the facts in Plaintiff's favor, including her allegations that she recorded what she saw; knew DuChene would be using her standard; and, that she did not rearrange the standard.  These facts make it unlikely that Plaintiff would have knowingly used an obviously flawed standard.  Thus, there is a genuine issue of material fact as to whether Defendant had an honest belief that Plaintiff intentionally recorded false results when it terminated her employment.  Defendant concedes that Plaintiff was not discharged for "making a mistake or for irregularities in her test results" but for "falsifying documentation." [Reply, p.8, n.3].

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claim of discrimination based on her termination.

### 3.    Hostile Environment

Plaintiff also claims national origin discrimination based on hostile environment. In order to establish a prima facie case of hostile work environment, Plaintiff must establish: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her national origin; (4) the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability.  *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

"In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee's work performance." *Id.*  Simple

21

teasing and offhand comments do not amount to discriminatory changes in the terms and conditions of employment; conduct must be extreme to meet that threshold. *Id.* at 512-513.

There is no dispute that Plaintiff is a member of a protected class.

Plaintiff claims she was subjected to unwelcome harassment. She states Leone routinely yelled at her. [Response, Exhibit 1, p.68]. According to Plaintiff, once Leone "started to throw up" when she warmed up her food. *Id.* at p.71. Leone also emailed Crist and asked if there was a politically correct way to ask Plaintiff to stop speaking loudly on the phone in another language because she found it extremely irritating. [Response, Exhibit G].

Plaintiff claims Crist often told her he could not understand her and she could not understand him, although she disputes that she had problems understanding him. *Id.* at pp.71-72. Plaintiff testified that one day Crist mocked the way she pronounced a co-worker's name. *Id.* at 98. She also claimed that during a meeting Crist asked her if she understood him, which embarrassed her. *Id.* at 100.

Plaintiff testified that Davis told her she should be like "Indra," a former employee of Indian descent, who came to work and went home and did not talk to anyone. *Id.* at 204-205.

Drawing inferences in favor of Plaintiff, the instances cited by Plaintiff involving Crist could relate to her accent, and hence her national origin. National origin and accent are often intertwined in discrimination cases. *Fragante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989). That Leone allegedly threw up and requested that Plaintiff not speak loudly *in another language* could be inferred as an

22

insult to Plaintiff's national origin.  The allegation that Leone routinely yelled at Plaintiff is nondescript.  Plaintiff does not claim that she yelled at her on the basis of her national origin, and does not define the content of the exchanges.

Nonetheless, Plaintiff fails to demonstrate that the alleged harassment resulted in a hostile environment.  To violate Title VII, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998).

Plaintiff does not allege any effect on her work performance.  She also does not describe the frequency or severity with which the alleged harassment occurred.  While she claims Crist continually stated that he could not understand her and questioned her ability to understand him, she does not allege any effect this had on her work performance.  In fact, Plaintiff claims her work performance was deserving of a promotion, based in part on Crist's favorable performance reviews.  Leone pretending to "throw up" and Crist mocking Plaintiff's pronunciation are isolated incidents, which unless "extremely serious" do not amount to a change in the terms and conditions of employment.  *Hafford*, 183 F.3d at 512.  While Plaintiff's work environment appears less than tolerant and friendly, it falls short of a hostile environment.

Accordingly, Plaintiff fails to establish a prima facie case of discrimination based on hostile environment.  See *Crawford v. Medina General Hospital*, 96 F.3d 830 (6th Cir. 1996)(the plaintiff failed to establish a prima facie case of hostile environment based on age discrimination despite allegations that supervisor said "old people should be seen and not heard" and "women should retire at age 55" also, several women allegedly

23

make lives of older employees "miserable."); *Kosereis v. Rhode Island*, 331 F.3d 207
(1st Cir. 2003)(the plaintiff failed to establish a prima facie case of hostile environment
based on his Turkish national origin despite allegations that he was called names by
students, co-workers teased him about his food, and was repeatedly reprimanded for
his attendance); and *Slayton v. Ohio Department of Youth Services*, 206 F.3d 669 (6th
Cir. 2000)(the plaintiff did establish a prima facie case of hostile environment based on
gender where co-worker continuously played graphic rap music; referred derogatorily to
her menstrual cycle; called her a bitch; displayed sexually explicit music videos; and
encouraged others to engage in harassing conduct).

### B.   National Origin and Age Discrimination Pursuant to ELCRA

### 1.   National Origin

Plaintiff alleges national origin discrimination under Michigan law.  "Cases
brought pursuant to the ELCRA are analyzed under the same evidentiary framework
used in Title VII cases."  *Humenny v. Genex Corporation, Inc.*, 390 F.3d 901, 906 (6th
Cir. 2004)(citation omitted).  See also *Lytle v. Malady*, 458 Mich. 153, 173 n.19 (1998).

However, Michigan law requires more than just a showing of pretext.  Contrary to
*Peters*, in order to withstand summary judgment plaintiffs must not only show that the
proffered reason is false, but also that discrimination was a motivating factor for the
adverse decision.  *Lytle*, 458 Mich. at 174-176.

### a.   Was discrimination a motivating factor in the adverse employment actions against Plaintiff?

As discussed above, Plaintiff established a prima facie case of national origin
discrimination for Defendant's failure to promote and her termination under Title VII.

24

Thus, the only remaining issue for purposes of the ELCRA is whether she presented sufficient evidence to create a genuine issue of material fact that her national origin was a motivating factor in those decisions.

Plaintiff relies on Crist's "constant comments and criticisms of Plaintiff's speech and communication;" and the fact that others were promoted consistently in a short time. [Response, p.31].  Plaintiff also relies on alleged discrimination against two other Asian employees.  But, Plaintiff presents no evidence to support her contention that these employees were discriminated against.

Crist's continuous criticism of Plaintiff's "communication" skills are well-documented.  "It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job." *Fragante*, 888 F.2d at 596.  Plaintiff also alleges that Crist mocked the way she pronounced a co-worker's name.

Leone pretended to vomit when Plaintiff warmed her food and asked Crist to tell her to stop speaking loudly in her native language.  Davis allegedly encouraged Plaintiff to behave like a former Asian employee, by doing her work and going home.

Also, according to Plaintiff, she was the only senior control analyst who sought a promotion but did not get it within a year and a half.

Lastly, Plaintiff claims that at least three white employees made mistakes in their test results, and were not even disciplined, while her mistakes resulted in termination.

Taking facts and inferences in Plaintiff's favor, she creates a genuine issue of

25

material fact as to whether her national origin was a motivating factor in the failure to promote her and her termination.

**b.    Age Discrimination**

Plaintiff also alleges age discrimination under the ELCRA.  Her claim of age discrimination is unvailing.  Plaintiff does not direct the Court to any evidence that she was discriminated against based on her age, other than to note that her co-workers were younger than she.

Accordingly, Defendant is entitled to summary judgment on this claim.

**C.    Disability Discrimination Pursuant to the ADA**

Plaintiff claims she was discriminated against based on her disability, Type II diabetes.

In order to establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate: (1) she was disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodations; (3) she suffered an adverse employment decision; (4) Defendant knew or had reason to know of her disability; and (5) her position remained open.  *Brenneman v. Medcentral Health System*, 366 F.3d 412, 417 (6th Cir. 2004).

To be considered disabled for purposes of the ADA, the plaintiff must: (1) have a physical or mental impairment which substantially limits him or her in at least one major life activity; (2) have a record of such an impairment; or (3) be regarded as having such an impairment.  *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  "There is no blanket rule for determining when a claimant is disabled...Congress intended the

26

existence of a disability to be determined in a case-by-case manner." *Id.*

Defendant challenges Plaintiff's allegation that she is disabled based on her diabetes. She claims her diabetes substantially limits the major life activities of sleeping and eating.

Sleeping is a major life activity. See *Scheerer v. Potter*, 443 F.3d 916, 920 (7th Cir. 2006); *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1060 (9th Cir. 2005); and *Pack v. Kmart Corporation*, 166 F.3d 1300, 1306 (10th Cir. 1999).

Eating is also a major life activity for purposes of the ADA. See *Waldrip v. General Electric Company*, 325 F.3d 652, 655 (5th Cir. 2003)(citing several cases); and *Lawson v. CSX Transportation, Inc.*, 245 F.3d 916, 923 (7th Cir. 2001).

Defendant concedes that diabetes is an impairment, but denies that it "substantially limits a major life activity." Plaintiff concludes that she "easily establishes a prime facie case" but does not direct the Court to any evidence to support such a finding. [Response, p.35]. Instead, Plaintiff cites a First Circuit case for the proposition that the legislative history of the ADA "specifically references diabetes as an example of an impairment that substantially limits a major life activity." [Response, p.34].

Plaintiff is incorrect. While diabetes is undoubtedly an impairment - it does not necessarily substantially limit a major life activity. As noted above, that determination requires a case-by-case inquiry. See *Mahon, supra*. See also *Salim v. MGM Grand Detroit, LLC*, 106 Fed.Appx. 454, 459 (6th Cir. 2004)(citing *Nawrot v. CPC International*, 277 F.3d 896, 903 (7th Cir. 2002)("Although Plaintiff is a diabetic, her diabetic status, per se, is not sufficient to qualify as a disability under the ADA...[h]er diabetes must substantially limit one or more major life activities.").

27

Plaintiff fails to identify how her diabetes affects the activities of sleeping and eating. While she contends she has to eat and sleep on a regular schedule to maintain her blood sugar levels, she fails to demonstrate in her Complaint or her Response how the major life activities of sleeping and eating are substantially impaired, such that she is disabled for purposes of the ADA.

Accordingly, Plaintiff fails to establish a genuine issue of fact that she is disabled.

In her Response, Plaintiff asserts that Defendant regarded her as having a disability. Her support is that "a jury could conclude from the evidence - including Defendant's hostility toward Plaintiff with respect to her doctor's appointments, its refusal to accommodate her work restrictions, and Plaintiff's comments and complaints to management that she needed to eat and sleep on a regular schedule in order to control her diabetes - that Defendant regarded her diabetes as a disability." [Response, p.34]. This is the extent of the argument Plaintiff advances for her contention that Defendant regarded her as being disabled due to her diabetes.

A person is "regarded as" disabled for purposes of the ADA when: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities; or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Mahon*, 295 F.3d at 592. Evidence that the employer complied with medical restrictions does not show that it regarded the employee as disabled. *Id*.

Plaintiff fails to present evidence to establish a genuine issue of material fact on that Defendant regarded her as disabled. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims of disability discrimination in violation of the

28

ADA.

**D.      Disability Discrimination Pursuant to PWDCRA**

The PWDCRA "substantially mirrors" the ADA.  *Cotter v. Ajilon Services, Inc.*,

287 F.3d 593, 597 (6th Cir. 2002).

Consequently, resolution of Plaintiff's claim under the ADA resolves her claim

under the PWDCRA.  Defendant is entitled to summary judgment.

**E.      Retaliation in Violation of Title VII and the ELCRA**

Plaintiff claims she was not promoted and terminated, in part, in retaliation for her

complaints that she was being treated differently on the basis of her national origin.

Defendant does not dispute that she complained she was being treated differently and

that following her suspension, she filed charges with the EEOC and MDCR. [Motion,

p.27].

In order to establish a prima facie case of retaliation under either Title VII or the

ELCRA, Plaintiff must show: (1) she engaged in protected activity; (2) Defendant knew

of the protected activity; (3) she suffered an adverse employment action; and (4) there

is a causal connection between her protected activity and the adverse employment

action.  See *Little v. BP Exploration & Oil Company*, 265 F.3d 357, 363 (6th Cir. 2001)

and *Meyer v. City of Centerline*, 242 Mich.App. 560, 568 (Mich.App. 2000).

Defendant claims Plaintiff fails to establish a prima facie case; it asserts she has

no evidence of a causal connection between her complaints and the failure to promote

and terminate her.  The only evidence Plaintiff offers to support a causal connection is

her allegation that Gantenbein told her it would not be good for her or Crist if she

reported her complaints to human resources, and Davis' comment that she should be

29

more like "Indra."  These statements are not enough to withstand summary judgment.

She also opines that following her complaints Defendant "set her up" by terminating her

for a "bogus integrity issue."  However, Plaintiff does not offer any evidence.

Accordingly, Plaintiff fails to establish a prima facie case of retaliation.

### F.    Retaliation in Violation of the WDCA

Plaintiff claims she was terminated in retaliation for filing a workers compensation

claim.  This claim requires Plaintiff to establish a causal connection between her

termination and her compensation claim.  *Clifford v. Cactus Drilling Corporation*, 419

Mich. 356, 353 (1984).  Plaintiff does not offer evidence to support a finding of

retaliation under the WDCA.

Defendant is entitled to summary judgment.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part,

Defendant's Motion for summary judgment.  Because the Court did not rely on

objectionable portions of Plaintiff's affidavit, and did not rely on Janie Gwinn's affidavit at

all in deciding this motion, Defendant's Motion to strike is **DENIED**.

Trial will proceed on Plaintiff's claims of:

(1)    National origin disparate treatment discrimination in violation of Title VII for

        (1) failure to train and promote and (2) termination; and

(2)    National origin disparate treatment discrimination in violation of the

        ELCRA for failure to promote and termination.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 17, 2006

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
August 17, 2006.

s/Linda Vertriest
Deputy Clerk